IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| GWENDOLYN DENISE COMBS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 118-022 |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of Social Security | ) | |
| Administration,[1] | ) | |
| | ) | |
| Defendant. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

_____

Gwendolyn Denise Combs appeals the decision of the Acting Commissioner partially denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act.  Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of the Commissioner.

I.     **BACKGROUND**

Plaintiff applied for DIB and SSI in August 2014, alleging a disability onset date of June 15, 2009.  Tr. ("R."), pp. 11, 218-25.  She last met the insured status requirements of the Social Security Act for DIB on June 30, 2012.  R. 12, 257.  Plaintiff was forty-three years old on her alleged disability onset date, forty-nine years old on the day before she was found to be disabled,

---

[1]The Court **DIRECTS** the **CLERK** to update Defendant's title on the docket consistent with the caption of this Report and Recommendation.

and fifty years old at the time the Administrative Law Judge ("ALJ") issued the decision under consideration.  R. 23, 25, 218.  Plaintiff alleged disability based on the following conditions: hepatoid biliary reconstruction surgery, carpal tunnel syndrome in both hands, degenerative disc disease in her spine, fibromyalgia, left hip arthritis, pinched nerve in her neck and back, shoulder bursitis, depression, chronic pain, and limited mobility.  R. 14, 261.  Plaintiff completed tenth grade, and prior to her alleged disability date, had accrued a work history that included jobs as a cook and housekeeper/cleaner.  R. 23, 44, 47.

The Social Security Administration denied Plaintiff's applications initially and on reconsideration.  R. 136-43, 146-50, 152-56.  Plaintiff requested a hearing before an ALJ, (R. 158-59), and the ALJ held a hearing on March 20, 2017.  R. 40-77.  At the hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel, and Mary Cornelius, a Vocational Expert ("VE").  Id.  On April 17, 2017 the ALJ issued a partially favorable decision, finding Plaintiff was not disabled prior to May 31, 2016, and therefore not eligible for DIB or SSI prior to that date but eligible for SSI as of May 31, 2016.  R. 7-30.

 Applying the sequential process required by 20 C.F.R. §§ 404.1520 and 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since her alleged onset date of June 15, 2009, through her date last insured ("DLI") of June 30, 2012, and through the date of the administrative decision (C.F.R. §§ 404.1571 *et seq*. and 416.971 *et seq*.).[2]

2. The claimant has the following severe impairments since June 15, 2009: degenerative disc disease, depression, anxiety, and polysubstance abuse (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

---

[2]Plaintiff had to prove she was disabled on or before June 30, 2012, to receive DIB, but for her SSI application, the relevant period is the month Plaintiff applied (August 2014) through the date of the ALJ's decision (April 17, 2017).  See Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005) (*per curiam*).

3.  Since June 15, 2009, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

4.  Since June 15, 2009, the claimant has the residual functional capacity ("RFC") to perform sedentary work[3] as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) as follows:  lift, carry, push, and pull 10 pounds occasionally; lift, carry, push, and pull less than 10 pounds frequently; sit for six hours in an eight-hour workday; stand/walk for two hours in an eight-hour workday; frequently stoop, crouch, and kneel; no crawling; frequently balance; no limits on hearing, seeing, or speaking; frequently climb stairs and ramps; no climbing of ladder, ropes, or scaffolds; can frequently reach bilaterally in all directions except only occasional overhead reaching; can frequently finger, feel, and handle; avoid concentrated exposure to vibrations; can frequently use hands and feet for the operation of controls; can perform simple, routine, repetitive job tasks; can understand, remember and carry out job instructions related to simple, routine, repetitive job duties; can accept frequent supervision; can occasionally interact with co-workers and with the general public; works best with objects and not with people; can maintain attention, concentration, and pace if allowed traditionally scheduled work breaks of 15 minutes in the first half of the workday, 15 minutes in the second half of the workday and a 30-minute midday break; can be punctual and work within a set schedule; requires no special supervision to complete work assignments pertaining to simple, routine, repetitive job tasks; can make work related decisions regarding simple, routine, and repetitive job tasks; can adapt to changes in job duties and work assignments if the changes are infrequent and gradually introduced; and should have no fixed quota or fast-paced factory production-line type work assignments. Thus, since June 15, 2009, the claimant has been unable to perform any past relevant work (20 C.F.R. §§ 404.1565 and 416.965).

5.  Prior to the established disability onset date, the claimant was a younger individual age 18-44.  On May 31, 2016, the claimant's age category changed to an individual closely approaching advanced age (20 C.F.R. §§ 404.1563

---

[3]"Sedentary work" is defined as:

lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a) & 416.967(a).

and 416.964).   Prior to May 31, 2016, considering the claimant's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that the claimant could have performed, (20 C.F.R. §§ 404.1569, 404.1569a, 416.969, and 416.969a), including addresser, lamp shade assembler, and document preparer, all of which are sedentary, unskilled jobs.  Beginning on May 31, 2016, considering the claimant's age, education, work experience, and RFC, there are no jobs that exist in significant numbers in the national economy that the claimant could perform (20 C.F.R. §§ 404.1560(c), 404.1566, 416.960(c), and 416.966). Therefore, the claimant was not disabled prior to May 31, 2016, including at any time through her DLI of June 30, 2012, but she became disabled on May 31, 2016, and has continued to be disabled through the date of the ALJ's decision, April 17, 2017 (20 C.F.R. §§ 404.1520(g), 416.920(g), 404.315(a), 404.320(b)).

R. 13-25.

When the Appeals Council denied Plaintiff's request for review, R. 1-6, the Commissioner's decision became "final" for the purpose of judicial review.  42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal or remand of that adverse decision. Plaintiff argues the Commissioner's decision is not supported by substantial evidence because the ALJ (1) accorded significant weight to the opinion of consultative examiner Adrian Janit, Ph.D., but failed to explain why he did not incorporate all of Dr. Janit's limitations into the RFC, (2) failed to properly weigh the opinion of Plaintiff's treating physician, Joseph A. Hooper, M.D., and (3) failed to incorporate Plaintiff's need for a cane in formulating the RFC.  See Pl.'s Br., doc. no. 14; Pl.'s Reply, doc. no. 18.  The Commissioner maintains the administrative decision is supported by substantial evidence.  See Comm'r's Br., doc. no. 17.

## II.   STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards.  Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997).  When considering whether the Commissioner's decision is supported by

substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's.  Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them.  Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991).  Substantial evidence is "more than a scintilla, but less than a preponderance:  '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'"  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239).  If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant.  Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004).  Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence.  McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity.  Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard).  If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether

correct legal standards were in fact applied, the Court must reverse the decision.  <u>Wiggins v. Schweiker</u>, 679 F.2d 1387, 1389 (11th Cir. 1982).

**III.    DISCUSSION**

    **A.    The RFC Determination Is Supported by Substantial Evidence**

        **1.    Step Four Framework for Formulating Plaintiff's RFC**

At step four of the sequential process, the ALJ evaluates a claimant's RFC and ability to return to past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv) & 416.920(a)(4)(iv).  RFC is defined in the regulations "as that which an individual is still able to do despite the limitations caused by his or her impairments."  <u>Phillips v. Barnhart</u>, 357 F.3d 1232, 1238 (11th Cir. 2004) (citation omitted).  Courts have described RFC as "a medical assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms."  <u>Watkins v. Comm'r of Soc. Sec.</u>, 457 F. App'x 868, 870 n.5 (11th Cir. 2012) (*per curiam*).  Limitations are divided into three categories:  (1) exertional limitations that impact the ability to perform the strength demands of a job, i.e., sitting, standing, walking, lifting, carrying, pushing or pulling; (2) non-exertional limitations that impact the ability to meet non-strength job demands, i.e., tolerating dust and fumes, appropriately responding to supervision, co-workers and work pressure, and difficulty performing manipulative or postural functions of jobs; and (3) a combination of exertional and non-exertional limitations.  <u>Baker v. Comm'r of Soc. Sec.</u>, 384 F. App'x 893, 894 (11th Cir. 2010) (*per curiam*) (citing 20 C.F.R. § 404.1569a(b)-(d)).  When determining whether a claimant can return to her past relevant work, the ALJ must consider "all the relevant medical and other evidence."  <u>Phillips</u>, 357 F.3d at 1238.

2.    **Assigning Weight to Medical Opinions**

In the Eleventh Circuit, a treating physician's opinion must be given substantial weight.  Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986).  Refusal to give a treating physician's opinion substantial weight requires that the Commissioner show good cause.  Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1159 (11th Cir. 2004); Schnorr v. Bowen, 816 F.2d 578, 581 (11th Cir. 1987).  "The [Commissioner] must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error."  MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986).

The Commissioner, however, is not obligated to agree with a medical opinion if the evidence tends toward a contrary conclusion.  Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985).   Indeed, a treating physician's opinion may be properly discounted if it is unsupported by objective medical evidence, is merely conclusory, or is inconsistent with the physician's medical records.  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); see also Phillips, 357 F.3d at 1241 (affirming ALJ's rejection of treating physician's opinion when such opinion conflicted with the doctor's treatment notes and claimant's testimony regarding daily activities).

When considering how much weight to give a medical opinion, the ALJ must consider a number of factors:

> (1) whether the doctor has examined the claimant; (2) the length, nature and extent of a treating doctor's relationship with the claimant; (3) the medical evidence and explanation supporting the doctor's opinion; (4) how consistent the doctor's "opinion is with the record as a whole"; and (5) the doctor's specialization.

Forsyth v. Comm'r of Soc. Sec., 503 F. App'x 892, 893 (11th Cir. 2013) (*per curiam*) (citing 20 C.F.R §§ 404.1527(c), 416.927(c)).

7

Additionally, the Commissioner's regulations require that the opinions of examining physicians be given more weight than non-examining physicians, the opinions of treating physicians be given more weight than non-treating physicians, and the opinions of specialists (on issues within their areas of expertise) be given more weight than non-specialists.  See 20 C.F.R. §§ 404.1527(c)(1)-(2), (5) and 416.927(c)(1)-(2), (5).   Under SSR 96-5p, the determination of disability regarding a Social Security claim is reserved to the Commissioner, and treating and other medical source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance.  SSR 96-5p, 1996 WL 374183, at *1, 2 (July 2, 1996); see also 20 C.F.R. §§ 404.1527(d) and 416.927(d).

> **a.** **The Mental Health Limitations in the RFC Are Consistent with Dr. Janit's Findings**

Plaintiff contends the ALJ erred in his treatment of the opinion of Dr. Janit, who conducted a consultative psychological examination in January 2015.  As the ALJ explained in detail, Dr. Janit reported, *inter alia*, Plaintiff fishes, participates twice a week in a billiard club, drives three times per week, independently performs household tasks of sweeping, vacuuming small areas, loading the dishwasher, and taking out the trash, was able to complete serial-4 additions but did not attempt serial-7 subtractions, had intact abstract reasoning, judgment, and insight, had fair concentration with an occasional need to have questions repeated.[4]  R. 16-17, 420-26.  Plaintiff's gait was slow and stiff, but she did not indicate she used a mobility device.  R. 17, 423.

As to Plaintiff's work related mental abilities, Dr. Janit concluded Plaintiff was (1) mildly limited in her ability to understand and carry out instructions, in that she was able to

---

[4]Plaintiff overstates her case when she claims Dr. Janit stated Plaintiff could not do serial -7 subtractions.  Pl.'s Reply, p. 2.  Rather, as recorded in Dr. Janit's report and recounted by the ALJ, Plaintiff *did not attempt* the serial-7 subtractions.  R. 17, 424 (emphasis added).

comprehend and comply with requests but often needed questions repeated; (2) mildly to moderately limited in maintaining attention and concentration because although to was able to focus throughout the two hour evaluation without "many" breaks, her depression and anxiety were "likely" to cause "periodic" difficulty; (3) mildly to moderately limited in her ability to respond appropriately to coworkers, supervisors, and the general public; (4) moderately limited in her ability to adhere to a work schedule and timely complete tasks because her reported symptoms are "likely" to impair her attendance, perseverance, and ability to complete tasks, and (5) moderately limited in her ability to withstand the stresses and pressures associated with most work settings because everyday stressors have the potential to trigger and/or exacerbate her psychological symptoms. R. 426. Dr. Janit did not provide any definitions for mildly or moderately limited, and as noted above, included several qualifiers of "likely," "periodic," and "reported" symptoms. The ALJ gave Dr. Janit's conclusions "significant weight since they are generally supported by his exam of [Plaintiff] and other mental exams throughout the record." R. 18.

Plaintiff acknowledges the ALJ accorded significant weight to Dr. Janit's opinions. However, according to Plaintiff, because the ALJ did not use the terms "mildly" or "moderately" limited in the mental limitations included in the RFC, the ALJ erred by not explaining why he failed to include all of Dr. Janit's limitations in the RFC. Plaintiff offers no case law supporting the conclusion an ALJ must use the exact terminology used by a consultative examiner. In fact, the case law suggests the opposite. See Miller v. Astrue, No. 2:09-cv-650, 2011 WL 1598731, at *9-10 (M.D. Fla. Apr. 28, 2011) ("Given the nebulous nature of the term "moderate," the Commissioner instructs adjudicators who complete mental RFC forms not to use non-specific qualifying terms such as "moderate" or "moderately

9

severe" because "[s]uch terms do not describe function and do not usefully convey the extent of capacity limitation." *Program Operations Manual System* DI 24510.065(B) (1).)   No matter, contends Plaintiff, if the ALJ does not "build an accurate and logical bridge" from the evidence to the limitations in the RFC, presumably by explaining why the exact language of a one-time consultative examiner was not incorporated verbatim into the RFC, and by extension to the hypothetical presented to the VE, the case must be remanded.  Pl.'s Br., pp. 10-12; Pl.'s Reply, pp. 2-3.

The ALJ is not required to adopt the non-specific terminology employed by Dr. Janit, and in fact accounted for Plaintiff's mental limitations by including specific work related functional limitations in the RFC.  Plaintiff's mild difficulties understanding and carrying out instructions were addressed by limiting Plaintiff to understanding and performing no more than simple, routine, and repetitive tasks, a limitation which also accounts for mild to moderate difficulties with attention and concentration.  See Miller, 2011 WL 1598731, at *9 (affirming ALJ's translation of "moderate difficulties" in concentration, persistence, or pace to limitation to routine, repetitive tasks.)  Likewise, Dr. Janit's opinion Plaintiff was mildly to moderately limited in her ability to respond appropriately to coworkers, supervisors, and the general public was accounted for in the RFC by limiting Plaintiff to only occasional interaction with coworkers and the public and working best with objects not people.  R. 20. Furthermore, the ALJ accounted for moderate limitations in adhering to a work schedule and withstanding stressors associated with work by limiting Plaintiff to simple, routine, repetitive tasks that have no fixed quota or fast-paced assignments, and any changes in job duties would have to be infrequent and introduced gradually.  Id.

Plaintiff does not point to any evidence in the record - other than her rigid adherence to "nebulous" language employed by Dr. Janit - suggesting the limitations in the RFC do not sufficiently account for any mental limitations.  In fact, as the ALJ pointed out, a complete review of the record supports the limitations in the RFC.  See, e.g., R. 15, 18-20.  For example, other notations in the record suggest essentially normal mental examinations that do not suggest anywhere near the level of limitation alleged by Plaintiff.  R. 340 (May 2009, oriented times four, normal mood, and normal judgment); R. 423-24 (January 2015, oriented to time, place, person, and situation; largely non-anxious throughout evaluation); R. 455 (March 2016, no depression, anxiety, or agitation in routine visit to Dr. Hooper); R. 506-07 (no psychiatric symptoms noted; alert, oriented, and cooperative during December 2016 emergency room; occupation noted as employed); R. 651 (although depressed mood and flat affect, insight intact, oriented to time, place, and person, February 2017); R. 677, 684 (appropriate mood and affect, cooperative on two separate outpatient visits to Augusta University Urology Department, February 2017).  Dr. Hooper's notes also show routine visits for "medication refills."  See, e.g., R. 428, 431.  Consultative examiner Dr. Brown noted during Plaintiff's November 25, 2014 examination Plaintiff was alert and oriented times three and could follow simple and complex commands.  R. 410.  Plaintiff testified at the hearing she can follow directions.  R. 61.  Dr. Janit noted Plaintiff "did not report working impairment related to mental health distress."  R. 424.

Finally, although Plaintiff accuses the ALJ of improperly engaging in "sit and squirm jurisprudence," (Pl.'s Reply, p. 3), by noting Plaintiff was able to maintain attention and concentration sufficiently to participate in the hearing in support of the RFC, (R. 19), an ALJ is permitted to consider personal observations in the context of the entirety of the medical

evidence - which is what the ALJ did here.  See Norris v. Heckler, 760 F.2d 1154, 1157-58 (11th Cir. 1985).  That is, the ALJ did not rely only on his observations to support the limitations for Plaintiff, but instead noted his observations at the hearing were consistent with the other, noted evidence in the record supporting the mental limitations that still allowed for the sedentary work as described in the RFC.

> **b.**     **The ALJ Properly Discounted the Check-the-Box Opinion of Dr. Hooper**

Plaintiff also complains the ALJ failed to accord proper weight to the opinions of Dr. Hooper, her treating physician.  In particular, Plaintiff argues the check-the-box opinions of Dr. Hooper provided on a form from the Law Offices of Ogle, Elrod, and Baril, PLLC, show Plaintiff is disabled from all work, and as Plaintiff's treating physician, those opinions should have been afforded substantial weight.  Pl.'s Br., pp. 14-17.

According to the Medical Statement (Overall Physical and Mental), Plaintiff would be absent from work five or more days per month, can never stoop or climb, and can infrequently lift six to ten pounds.  R. 449.  The Medical Statement also states Plaintiff has no functioning to sustain an ordinary routine, work in coordination or proximity to others without being distracted, adapt to ordinary stress or changes in the workplace, maintain attention and concentration for extended periods of time, get along with co-workers or peers, or maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness.  R. 450-51.  Dr. Hooper also opined on the form Plaintiff has "a reasonable medical need to lie down due to pain fatigue, or other impairment, but when asked how often and how long Plaintiff would have to lie down, Dr. Hooper left the question blank.  R. 450.  Dr. Hooper also checked the box for Plaintiff requiring the use of an assistive device to ambulate, but there are no details on the type of device or circumstances under which such a

device is necessary.  Id.  Although Dr. Hooper also checked the box Plaintiff would need to take unscheduled breaks during an eight-hour work day beyond the normal twice per day fifteen-minute break and lunch break, he provided no details on how many or how long such additional breaks were required.  R. 451.

In according Dr. Hooper's opinions some weight, the ALJ explained "the vast majority of Dr. [H]ooper's conclusions are not supported by his treatment notes or the treatment notes from other providers," and noted his conclusions were "also not supported by diagnostic imaging, which has shown limited abnormal findings."  R. 18.  The ALJ also explained Plaintiff's treatment has been conservative and limited to medication.  Id.  The administrative opinion also contains a thorough and sifting review of the medical evidence, (R. 15-19), none of which supports the severity of the limitations suggested by Dr. Hooper's check-the-box opinion on Plaintiff's ability to work.

As to physical limitations, the ALJ's thorough review of the record revealed no significant strength deficits, circulatory compromise, neurological deficits, muscle spasms, or atrophy, and treatment notes generally did not indicate Plaintiff was in apparent distress. R. 14-16, 18; R. 345 (full range of motion in extremities in March 2009); R. 410, 416-18 (no paraspinal tenderness; some limitations to back movement but normal straight leg raising and five out of five strength across lower extremities during November 2014 consultative examination); R. 429 (April 2015 no acute distress during physical examination for back pain); R. 469-70 (July 2016, no radiating pain from right flank, musculoskeletal assessed as normal range of motion); R. 650 (February 2017, no acute distress).

Plaintiff's reliance on select portions of the record showing some discomfort at a certain point in time does not show the ALJ erred in relying on the entirety of the record to

show Dr. Hooper's check-the-box opinions were not entitled to significant weight.  See Pl.'s Br., pp. 15-16.  Some of the information cited pre-dates Plaintiff's alleged onset date.  See, e.g., R. 340 (notes of 2009 trip to emergency room after slipping on water and twisting back showed hesitant gait and inability to do leg raise); R. 663 (April 2008, decreased range of motion and decreased mobility from unknown bench mark).  Other information of general tenderness of the paraspinal muscles and waddling gait were recorded during routine, follow up visits for medication refills with no treatment changes noted.  See R. 457, 460 (July and October 2015 office visit with Dr. Hooper).

Plaintiff offers no support from the record for other limitations proposed by Dr. Hooper which she claims requires a finding of disability, for example, Dr. Hooper's opinion Plaintiff could never stoop.  Pl.'s Br., p. 17; R. 449.  None of the evidence cited by Plaintiff supports the severity of the limitations indicated on Dr. Hooper's check-the-box form or otherwise undermines the RFC formulated by the ALJ, with its many limitations, resulting in a determination there was sedentary work available in the national economy Plaintiff could perform prior to her fiftieth birthday.

As to the severe mental limitations suggested by Dr. Hooper, as explained in detail in section III(A)(2)(a), the ALJ accurately reasoned the mental examinations throughout the record had been normal or nearly normal.  Plaintiff also socialized on a regular basis, including twice-weekly participation in a billiards club.  R. 17, 423, 424.  Nor had Plaintiff's mental conditions required emergency room care or hospitalization.  See Peters v. Astrue, 232 F. App'x 866, 871 (11th Cir. 2007) (per curiam) (affirming ALJ reliance on "conservative" course of treatment as part of good cause analysis to discount treating physician opinion of more restrictive limitations that contained in RFC).

14

The ultimate disability decision always belongs to the Commissioner.  See SSR 96-5p, 1996 WL 374183, at *1, 2; see also 20 C.F.R. §§ 404.1527(d) and 416.927(d).  The ALJ relied not only Dr. Hooper's own treatment notes, but also the entirety of the medical evidence to discount the severe limitations offered by Dr. Hooper in his check-the-box opinions, some of which even Dr. Hooper declined to detail with specific information now promoted by Plaintiff, including for example, (R. 450), about how long and how many breaks she would need in a day.

Plaintiff's attempt to interpret the facts differently than the ALJ by pointing to select facts favoring her view of disability provides no basis for this Court to reverse or remand.  This Court's job is not to review the administrative record de novo, but rather is to review the record for substantial evidence to support the Commissioner's factual findings, and if so found, uphold the Commissioner even if the evidence preponderates in favor of the claimant.  See Crawford, 363 F.3d at 1158-59.  That a different result is possible, does not mean the ALJ improperly "cherry picked" information to support his decision or that the Commissioner's decision must be reversed.  In sum, the ALJ's decision to accord "some" weight to Dr. Hooper's opinion is supported by substantial evidence.

### 3. The ALJ Did Not Err in Failing to Incorporate the Use of a Cane in the RFC

Plaintiff argues the ALJ also erred in failing to incorporate the need to use a cane for ambulation in the RFC by reasoning "the record does not demonstrate clinical findings that would support a mobility device, such as muscle atropy, poor balance, or decreased motor function or strength."  R. 22.  In support, Plaintiff cites to three notations in the record:  (1) a state agency consultant stated Plaintiff required a cane for long distance and uneven terrain, R. 86, 99; (2) Dr. Brown noted in the report from his consultative examination Plaintiff had a

pronounced limp and required a cane for balance, R. 410, 418; and (3) Dr. Hooper checked

the "yes" box in response to the question, "Does your patient require the use of an assistive

device to ambulate," R. 450.

> To find that a hand-held assistive device, such as a cane, is medically required,
>
> [T]here must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). . . .  For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.

SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996).

Moreover, "SSR 96-9p requires more than generalized evidence of a condition that

might require a cane.  It requires 'medical documentation *establishing the need* for a hand-

held assistive device to aid in walking or standing, and describing the circumstances for

which it is needed.'"  Staples v. Astrue, 329 F. App'x 189, 191 (10th Cir. 2009) (quoting

SSR 96-9p); see also Reynolds-Buckley v. Astrue, No. 8:10-CV-1668-T-TGW, 2011 WL

2460919, at *5 (M.D. Fla. June 20, 2011) ("Significantly, the record contains no prescription

for a cane, or other indication that the plaintiff requires an assistive device . . . . Since the

plaintiff has not provided any [medical documentation establishing the need for a hand-held

assistive device and describing circumstances in which device is needed], she has failed to

show that the use of a cane is medically required.").

As explained by the ALJ, (R. 16, 22), and as reviewed in section III(A)(2)(b), a

review of the record did not show clinical support for including use of a cane in the RFC,

such as muscle atrophy, poor balance, or decreased motor function or strength.  When asked

at the hearing if there was a prescription for a cane in the record, Plaintiff's counsel pointed

not to a prescription, but rather to Dr. Brown's general notation that Plaintiff required a cane. R. 76-77. On the form where Dr. Brown indicated Plaintiff had a pronounced limp and required a cane for balance, he was asked for a description of gait and station and asked to identify any assistive device that is required for ambulation and to give the medical basis for its use. R. 418. The form also indicates the patient should be evaluated with and without the device and that any reason precluding testing without the device must be specified. Id. The only information recorded by Dr. Brown during his one-time examination was, "Pronounced limp; requires cane." Id. Dr. Brown did not provide any details about a medical basis or the circumstances under which Plaintiff required use of a cane.

Similarly, Dr. Hooper provided no medical documentation establishing the need for a cane or the circumstances under which it is needed. R. 450. When Dr. Janit noted in the report of the consultative mental evaluation that Plaintiff's gait was slow and stiff, R. 423, there was no mention of her using a cane. Nor does the record contain any instructions about when the use of a cane is necessary. Plaintiff testified at the hearing the cane she uses is one her dad purchased and sent to her from Kentucky. R. 65. Nor does Plaintiff have any explanation why a notation from state agency consultant that she required use of a cane for long distance and uneven terrain satisfies the requirements of SSR 96-9p or otherwise would interfere with her ability to perform the sedentary jobs identified by the ALJ.

This is not a case where the ALJ failed to acknowledge or discuss Plaintiff's stated need for a mobility device. He did. R. 16, 22. Rather, the ALJ explained his reasons for determining the record did not contain the necessary clinical findings to support inclusion of a cane in the RFC. As discussed above, there is no medical documentation, as required by SSR 96-9p, establishing and describing the circumstances under which the cane is a medical

17

necessity.  To the extent Plaintiff contends she is disabled because of the VE testimony that if Plaintiff used a cane in her dominant hand for ambulation and postural activities, all work would be precluded, (Pl.'s Br., p. 19 (citing R. 75)), her argument falls short.  As discussed in the next section, although several hypothetical questions were presented to the VE, the ALJ relied on the VE's response to the hypothetical accounting for all of Plaintiff's limitations supported by the substantial evidence of record, to properly determine there were sedentary jobs in the national economy Plaintiff could perform.

### 4.   The ALJ Properly Relied on the VE's Testimony

As part of her arguments raised above concerning the ALJ's alleged error in failing to incorporate limitations from Dr. Janit's and Dr. Hooper's opinions, as well as the need for using a cane, into the RFC, Plaintiff makes the related argument that relying on a VE response to a hypothetical that failed to include all of these limitations requires remand.  Pl.'s Br., pp. 12, 13, 17, 19.  For example, Plaintiff relies on the general proposition that a hypothetical presented to a VE failing to account for a claimant's mental limitations requires reversal.  Id. at 12, 13 (citing Olsen v. Astrue, 858 F. Supp.2d 1306, 1320 (M.D. Fla. 2012)).  However, as explained above in detail, the ALJ did not err in weighing the medical opinions and determining Plaintiff did not need a cane as alleged.  Likewise, the ALJ's decision to rely on the VE's response identifying three representative, unskilled sedentary jobs Plaintiff could perform prior to her fiftieth birthday is supported by substantial evidence.

The underlying assumptions of the hypothetical questions posed to the VE must accurately and comprehensively reflect the claimant's characteristics, and a reviewing court must determine whether they are supported by substantial evidence.  McSwain v. Bowen, 814 F.2d 617, 619-20 (11th Cir. 1987); Pendley v. Heckler, 767 F.2d 1561, 1562-63 (11th Cir. 1985); see

also Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002) ("In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments.") (citing Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).) However, a hypothetical question need not incorporate alleged impairments that the ALJ has properly discredited or found to be unsupported by the medical evidence. Crawford, 363 F.3d at 1161.

Furthermore, although the Eleventh Circuit has noted other circuits have rejected the contention that simply limiting a hypothetical question to simple, routine tasks or unskilled work may not generally account for limitations in concentration, persistence, and pace, there are other ways to account for such limitations in formulating a valid hypothetical for the VE. Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180-81 (11th Cir. 2011).

> [W]hen medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations. Additionally, other circuits have held that hypothetical questions adequately account for these limitations in concentration, persistence, and pace when the questions otherwise implicitly account for these limitations.

Id. at 1180; see also Lee v. Comm'r, Soc. Sec. Admin., 551 F. App'x 539, 541 (11th Cir. 2014) (per curiam); Washington v. Soc. Sec. Admin., Comm'r, 503 F. App'x 881, 883 (11th Cir. 2013) (per curiam).

Plaintiff argues the ALJ did not adequately account for "Plaintiff's *moderate* limitation in concentration, persistence, and pace by limiting her to simple, routine, repetitive tasks" and claims Richter v. Comm'r of Soc. Sec., 379 F. App'x 959, 961 (11th Cir. 2010) supports her argument. Pl.'s Reply, p. 2 (emphasis added). First, Dr. Janit's opinion upon which Plaintiff relies states Plaintiff's ability to maintain attention and concentration is "*mildly to moderately*

19

limited." R. 424 (emphasis in original). Second, in the unpublished <u>Richter</u> decision, the panel recognized the Eleventh Circuit had "never addressed the question of whether a hypothetical question must specifically account for documented limitations of 'concentration persistent, or pace.'" 379 F. App'x at 960. The panel went on to determine the hypothetical under consideration was insufficient *for a variety of reasons*, including the failure to include limitations on pace and repetition. <u>Id.</u> at 961-62. Moreover, in a later published opinion, the Eleventh Circuit cited with approval cases concluding that limiting the hypothetical to include only routine tasks or unskilled work can sufficiently account for limitations in concentration, persistence, and pace. <u>See</u> <u>Winschel</u>, 631 F.3d at 1180. The <u>Winschel</u> court also noted other circuits have approved hypotheticals that otherwise implicitly account for such limitations.[5] <u>See</u> <u>id.</u> at 1180-81.

Here, the ALJ specifically included in the hypothetical simple, routine, repetitive tasks, an ability to maintain attention, concentration and pace if allowed traditional breaks, and eliminated fixed quota or fast-paced factory production-line types of work. R. 70-71, 74-75. The VE identified three, unskilled sedentary jobs Plaintiff could perform with those limitations. As to the additional limitations Plaintiff would also include regarding the severe, but as discussed in detail above, unsupported limitations from Dr. Hooper, Plaintiff points to nothing in the record to show any credible, additional limitations should have been included in the hypothetical upon which the ALJ relied. For example, Plaintiff argues the VE testified a limitation to allow for extra breaks to lie down, as opined in Dr. Hooper's check-the-box form, would be work preclusive. Pl.'s Br., p. 17 (citing R. 73). However, as discussed above, Dr. Hooper did not offer a suggestion as to how often and how long Plaintiff would have a reasonable need to lie

---

[5]"Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. §§ 404.1568(a) & 416.968(a).

down.  R. 450.  Likewise, Plaintiff argues a limitation to preclude stooping is disabling, as is presumably being off task sixty percent of the day as opined by Dr. Hooper.  Pl.'s Br., p. 17; R. 450.  Yet Plaintiff points to nothing in the record that validly supports such severe restrictions. Finally, as discussed above, the record does not support a finding Plaintiff had a medical necessity for a cane such that inclusion of a cane in the hypothetical upon which the ALJ relied was required.

In sum, in presenting the hypothetical to the VE upon which he relied to determine Plaintiff was not disabled prior to her fiftieth birthday, the ALJ properly excluded those of Plaintiff's alleged limitations that he found to be unsupported or incredible.  See Crawford, 363 F.3d at 1161.  Because the hypothetical upon which the ALJ relied to find Plaintiff was not disabled, accurately and comprehensively reflected Plaintiff's characteristics, the ALJ's reliance on the VE testimony was proper.  See McSwain, 814 F.2d at 619-20; Pendley, 767 F.2d at 1562-63.

## IV.   CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 26th day of March, 2019, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

21